HAWORTH v. STARK et al.

(Circuit Court, S. D. New York. July 5, 1898.)

1. PATENTS—PRIOR USE—EVIDENCE.
    While evidence of prior use is always to be closely scrutinized, and accepted with caution, yet the measure of affirmative proof required to establish the defense will be less when, on the conceded facts as to the prior state of the art, it would seem an almost irresistible inference that the patented method was in fact used prior to the date of the alleged invention.

2. SAME—SHIPPING CASES.
    The Haworth patent, No. 496,157, for devices for securing packing, storing, and shipping boxes against surreptitious opening and plundering, is void because of prior use.

This was a case in equity by William H. Haworth against Lazar Stark and others, praying an injunction and accounting for alleged infringement of a patent. Final hearing on pleadings and proofs.

Herbert H. Walker, for complainant.
Joseph L. Levy, for defendants.

LACOMBE, Circuit Judge. This is a suit upon letters patent No. 496,157, dated April 25, 1893, to complainant. The specification says:

"My invention relates to packing, storing, and shipping cases, and has especial reference to devices for securing the same against surreptitious opening and plundering. * * * In Fig. 1, A indicates the case, formed of

boards, a, a, properly nailed or otherwise secured together. **B** denotes a strap around the end of the box. A series of small holes, c, c, are made through the boards, entirely around the case; there being two holes in each board. D is the cord, which, for purposes of security, passes continuously in and out through said holes around the case. The ends of the cords are drawn tightly together and secured, usually by a leaden seal. A cord protection has heretofore been attempted, in which the cord was passed into a hole, as c', and out again through a hole, as c, in the adjacent board; thus crossing the seam, e, between the boards underneath the same, and within the box. But this method has proven to be ineffective, as the cord has been easily cut by a knife or thin file thrust in through the seam, e. Then, when the contents of the box have been removed, the ends of the cord have been tacked to the underside of the boards, so that when they have been replaced upon the box the cord appeared to be intact. In my invention the cord is passed in through a hole, c, and out through a hole, c', in the same board; then is crossed over the seam, e, on the other side of the box, and into the hole, c, in the next board. In like manner the joint at the edge of the box, which has been greatly exposed, is protected equally with the sides of the box. In my system, however, the cord at the edges is liable to injury from abrasion in handling. This difficulty I avoid by making notches or indentations, d, at each edge, in which the cord may lie."

The claims are:

"(1) In a packing and shipping case, a securing cord interlaced through each board, and crossing each seam only on the outer side of the case; its ends being tightly drawn together, and sealed in any manner preferred, as herein described. (2) In a packing and shipping case, a securing device, consisting in a series of holes around the case, and a cord passing in and out through said holes and notches, and continuously around the case, crossing each seam between the boards on the outside of the case, and having its ends drawn tightly together and sealed."

The patent was applied for October 13, 1892, but Haworth described his method of lacing some 18 months earlier to one of the officers in the steamship company where he was employed; and that company and some of its associated lines, approving such method, have sought to enforce it by charging higher rates for freight on boxes not secured in the manner set forth in the patent. Complainant fixes the date of his invention as May 18, 1891, when his attention was drawn to a packing case (containing cigars) which had been laced with the cords crossing seams on the inside, and had been tampered with in the way pointed out in the patent. Efforts to secure such boxes against similar tampering had been going on for years. From the statements in the patent, and from the evidence of complainant's own witnesses, it is manifest that prior to his alleged invention the art had progressed so far that boxes were in common use which had two holes bored in each board to receive a securing cord, and it was also common to lace the cord through each and every hole, into one hole and out of the next. The utmost extent of complainant's alleged invention consists, therefore, in so beginning the operation of lacing that when such operation is completed the securing cord will cross each seam on the outside. This is manifestly an extremely narrow invention, and defendants contend that it is not patentable, but it is not necessary to enter into any discussion upon that branch of the case. The evidence as to prior use seems to be sufficient to defeat the patent. Three witnesses are called who testify that for some time

88 F.—33

prior to 1891 packing boxes were occasionally laced so as to cross seams on the outside. One of these is a defendant. Cross-examination brings out some contradictions in the testimony of the other two. The rule is well settled that evidence of prior use must always be closely scrutinized, and accepted with caution. Nevertheless this court is convinced that boxes were occasionally thus laced before May, 1891. The measure of proof required to establish any proposition must necessarily vary with its degree of probability. Here, upon the testimony of complainant's own witnesses, and on the conceded facts, it would seem to be an almost irresistible inference, even without any more direct proof, that boxes were so laced to secure them against thieves. It appears that the only purpose of cording was to obtain such security; that cording, of one sort or another, had been used for years; that, as one of complainant's witnesses states, it was in the early 80's when a series of holes (two to each board), and a cord passing in and out of those holes, came into use. Witness after witness testifies that during the period prior to 1891 packing boxes were "corded in different manners"; "different shippers had different methods"; there was "no systematic way of cording"; "no rule for any special system"; "no standard method"; that "a shipper was guided by his own judgment." When Fig. 1 is referred to, and it is borne in mind that the cord will cross the seams inside or outside according as it is first inserted into one particular hole or the adjacent one, or according as the operation of lacing is begun from the outside or the inside of the box, and that the result may even depend upon whether the man who does the lacing is right or left handed, it surely ought not to require much affirmative proof to establish the proposition that boxes during that period were sometimes laced with the cord crossing seams on the outside. Complainant's witness Walker says:

"There were two holes in each board. By starting the cord in one way, and bringing it out of the same board through the other hole, the cord passed across the cracks inside the case. By reversing the lacing, the cord passed over the cracks on the outside of the case."

Complainant's witness McKeon says:

"Now, to start the cord on the inside of the case, up through one hole, down through the other, would bring the cord over the seam on the inside of the case. On the other hand, if we start the cord on the outside of the case (that is, going down through one hole, and up through the other), it would bring the cord over the seams on the outside of the case."

Surely, before the steamship company prescribed a definite method of lacing, it must have been wholly a matter of chance whether a box was laced the one way or the other; and for that reason the evidence of complainant's witnesses, receiving clerks in freight lines, that they do not recollect seeing, prior to 1891, any boxes so laced that the cord crossed seams on the outside, is not particularly persuasive. The evidence of defendants' witnesses, on the contrary, confirms what the court might almost assume without proof. The bill is dismissed.